# EXHIBIT C

Filed
8/5/2019 4:03 PM
Esther Degollado
District Clerk
Webb District
Esmeralda Alvarado
2019CVH001434D4

CAUSE NO. _____

| | | |
|---|---|---|
| **HINCA LEASING INC.** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | **WEBB COUNTY, TEXAS** |
| **GREAT AMERICAN INSURANCE** | § | |
| **COMPANY OF NEW YORK** | § | |
| *Defendant.* | § | _____ **JUDICIAL DISTRICT** |

## PLAINTIFF'S ORIGINAL PETITION

Plaintiff Hinca Leasing Inc. ("Plaintiff") files this Original Petition against Defendant Great American Insurance Company of New York ("Great American" or the "Carrier"), and would respectfully show the following:

### I.
### DISCOVERY CONTROL PLAN

1.     Plaintiff intends for discovery to be conducted under Level 2 of Rule 190 of the Texas Rules of Civil Procedure.

### II.
### PARTIES AND PROCESS SERVICE

2.     Plaintiff is a Texas corporation domiciled in Texas with its principle place of business in Webb County, Texas.

3.     Defendant Great American is an insurance company engaging in the business of insurance in Texas, operating for the purpose of accumulating monetary profit. Defendant regularly conducts the business of insurance in a systematic and continuous manner in the State of Texas. For purposes of diversity jurisdiction, Defendant is not considered a citizen of Texas.  Defendant may be served with process via U.S. Postal Service certified mail, return receipt requested, by serving its attorney for service, CT Corporation, 1999 Bryan St. Ste. 900, Dallas, TX 75201-4284.

4.     The Clerk is requested to issue Citation.

## III.
## JURISDICTION

5.      Plaintiff seeks monetary relief over $1,000,000.  Such damages sought are within the

jurisdictional limits of the court. Plaintiff contends that the determination of damages is within the

sole discretion of the Judge and Jury but makes this statement as required by TEX. R. CIV. P. 47.

6.      The court has jurisdiction over Defendant Great American because Plaintiff's causes of

action arise out of this Defendant's business activities in Texas.

## IV.
## VENUE

7.      Venue is proper in Webb County, Texas, because the insured property giving rise to this

cause of action is situated in Webb County, Texas.  TEX. CIV. PRAC. REM. CODE § 15.032.

## V.
## NOTICE AND CONDITIONS PRECEDENT

8.      Defendant has been provided notice, in writing, of the claims made by Plaintiff in this

petition, including Plaintiff's actual damages in the manner and form required.

9.      All conditions precedent necessary to maintain this action and the Claim under the

insurance policy at issue in this suit have been performed, occurred, or have been waived by

Defendant; or Defendant are otherwise estopped from raising same due to Defendant's prior breach

of the insurance contract.

## VI.
## FACTS

### A. The Property and The Policy.

10.     Hinca Leasing, Inc. owns a commercial warehouse located at 502 Nafta Blvd., Laredo, TX

78045 ("the Property") which, on the date of the loss referenced above, was insured by insurance

policy (No. MAC155292100) issued by Defendant (the "Policy"). The Property is a large commercial warehouse with metal R panels covering the roofing system.



**502 Nafta Blvd, Laredo, TX 78045**

### B. Hail and Wind Storm Damage.

11.     On or about May 21, 2017, Plaintiff's Property was damaged by a massive hail and wind storm (the "Storm") that struck Webb County and Laredo, pounding the area with up to golf ball sized hail and causing hundreds of thousands of dollars in damage.



*http://www.interactivehailmaps.com/local-hail-map/laredo-tx/#prettyPhoto/17/*

The Hail Storm was widely reported by the local new media:

https://www.lmtonline.com/local/article/How-does-Laredo-s-storm-compare-to-the-worst-11173257.php

https://watchers.news/2017/05/22/nuevo-laredo-tornado-thunderstorm/

Numerous videos documenting the extreme nature of the Hail Storm have been uploaded to the

internet.  The links below are a sampling of such videos:

https://www.youtube.com/watch?v=T4a5SzyzdQU

https://www.youtube.com/watch?v=f585C6_wuQo

---

https://www.youtube.com/watch?v=iZ8Qw4_HL44.

12.     As a result of the Storm, the Property sustained significant damage to its exterior and roofing system through which rain water entered the Property causing interior damage.   The roofing system was damaged so extensively that it no longer can perform its intended functions and must now be replaced.   The damages sustained by Plaintiff are covered under the Policy.   Prior to the Storm, the roofing system was performing as intended.

### C. The Claim and Defendant's Failures to Properly Handle The Claim.

13.     After experiencing significant roof leaks over an extended period of time following the Storm, Plaintiff made a claim (the "Claim") on June 29, 2018 through its public adjuster with Defendant, requesting payment for damages to the Property covered by the Policy.

14.     Defendant assigned the Claim to its parent company, Great American Insurance Group ("GAIG"), to administer, investigate and adjust the Claim. For example, all communications from Defendant were sent on GAIG letterhead. Defendant operates as a subsidiary of GAIG. GAIG then assigned the Claim to adjuster, Scot D'Arbonne with McLarens, to further assist and investigate the claim. Envista Forensics and its engineer, Matthew W. Cowan P.E., were also retained by Defendant to assist with the investigation and adjustment of the claim. At all material times, D'Arbonne and Envista were acting as agents of Defendant. Accordingly, Defendant is liable for their acts and omissions.

15.     Although Texas law provides an insurer has a "non-delegable duty" to responsibly handle claims, delegate its duty is precisely what Defendant did. More specifically, because the Carrier does not have a single employee in Texas, Defendant retained the services of D'Arbonne with McLarens to act as a third-party administrator for the Claim and to assist the Carrier in evaluating

the Claim. D'Arbonne was subsequently retained by the Carrier as the only licensed Texas adjuster that would actually investigate and evaluate the losses in-person on their behalf.

16.     Defendant delegated its claim decision responsibilities to a Texas-based adjuster like D'Arbonne with limited oversight by the Carrier. Oftentimes, claims are not even reported to the actual insurance company like Defendant until a third-party adjuster such as D'Arbonne decides it rises to a level that merits the insurer's attention.  In this type of absentee insurer environment, claims standards and guidelines become arbitrary and are routinely outsourced.  Adjuster training is deferred, or simply never happens. Financial incentives are turned on their head, as the third-party administrators and adjusters, and the managers who oversee them, are compensated with bonuses and incentives tied to profitability manufactured by claim denials and underpayments. Defendant's absentee structure is such that it is virtually impossible to comply with Texas law concerning claims handling guidelines and the prohibition on delegating these guidelines. Delegation to third party adjusters such as D'Arbonne and McLarens, who have a lengthy relationship of resolving claims for Defendant accompanied by a significant financial incentive to steer claims away from covered losses, where possible, has become the new normal.

17.     As will be discussed in more detail below, D'Arbonne and Envista's determination (as adopted by Defendant) grossly undervalued and mischaracterized both the structural damages the Property suffered due to the Storm and the timing of such damages.  Although the carrier and its agents are required by Texas law and the Policy to conduct a reasonable and thorough investigation of the Claim, they failed to do so.  Rather than accept coverage for the obvious damage caused by the Storm, Defendant pinned the entirety of its underpayment of the Claim on a laundry list of exclusions, including that the extensive damage preceded the Storm by some unknown period. As

of the date of this notice, Defendant has failed to issue complete payment to Plaintiff for all Plaintiff's losses which are covered under the Policy.

18.      After the Claim was made, D'Arbonne and Envista inspected the Property and prepared estimates of the cost to repair the structural damage to the Property.  On July 18, 2018, D'Arbonne and Envista were escorted around the Property during a joint inspection.  D'Arbonne almost immediately began efforts to steer covered losses into exclusions, which he was well aware were contained within the Policy.  Specifically, D'Arbonne was directly misrepresenting to Defendant that any damage sustained by the Property was caused outside of the Policy's period.  D'Arbonne performed a substandard inspection of the Property by spending approximately an hour onsite. While not disputing the damages to the Property were indeed significant, including the interior water damage, D'Arbonne took a different route by specifically engaging an expert to double-down on his efforts to ensure any covered losses would be steered into exclusions (i.e., damages occurred outside the Policy's period).

19.      As one could have predicted, Envista stuck with the party line set by D'Arbonne, attributing the vast majority of the damages to the Property to anything other than the Storm. Envista was able to definitively decide during its short investigation that the hail and wind damage was sustained "prior to the installation of the rooftop AC units that were installed in 2010" because there was allegedly no evidence of hail damage to the rooftop air conditioning units.  Despite recognizing the A/C unit with no alleged hail damage from the Storm had a "cover" on it, D'Arbonne conveniently disregarded Envista's own weather data that *10* other hail storms had occurred since 2010 within 5 miles of the Property which apparently had not sufficiently impacted the unit.  And, of course, the Storm was the only wind event in the last 10 years where wind speeds even remotely approached 95+ MPH, more than sufficient to drive even smaller hail stones into

the roofing system and significantly impact the overall functionality of the roofing system. D'Arbonne additionally disregarded or ignored Plaintiff's reported increased leak history since the Storm (which prompted Plaintiff to retain a licensed public adjuster in the first place).

20.     Defendant failed to execute a thorough investigation of the Claim by performing substandard investigations. With complete knowledge that Envista is routinely hired by insurance carriers across Texas, Envista was hired knowing that the retention of this third-party engineering company would create the appearance of a bona fide disagreement between Plaintiff's expert (the public adjuster) and the carrier, potentially absolving Defendant of bad faith exposure down the road for its strained coverage position. Defendant then relied on the conclusions from both D'Arbonne and Envista based on inadequate and biased inspections, which claimed that the damages sustained by the Storm actually took place "prior to the installation of the rooftop AC units that were installed in 2010."

21.     Envista's opinions were unreasonable, pretextual and internally inconsistent; unfortunately, this type of improper practice has become common among insurance industry engineers. But, of course, Defendant knew this all too well—this is *precisely* why Exponent had been retained.

22.     Defendant improperly concluded that there were no damages resulting from hail or wind during the period of coverage to the exterior of the building, instead issuing a payment of $10,000 for the interior water damage. Defendant's claim decision intentionally and maliciously mischaracterized Plaintiff's claim for the purpose of denying coverage as outside the period of coverage.

23.     Defendant relied exclusively on D'Arbonne's substandard and biased investigation when it determined the amounts, if any, to pay on Plaintiff's claim and failed to perform its own

inspection. Defendant wholeheartedly adopted Envista's findings and eventually determined the

replacement cost value to repair the interior damages to the Property would be capped at $10,000,

as evidenced by Defendant's claim decision letter dated March 22, 2019. Defendant subsequently

determined its "investigation revealed the hail damage to the exterior of the building did not occur

on May 21, 2017 as reported." The letter stating in part:

**Partial Disclaimer of Coverage:**

Our investigation revealed the hail damage to 502 Nafta Blvd., Laredo, TX does not appear to have
occurred on May 21, 2017 as reported. It appears the damage occurred prior to the coverage effective
date of October 30, 2016 based on evidence available at the location including rooftop air conditioning
units that show no signs of hail damage. Specifically, following the inspection by Matthew Cowen of
Envista Forensics, it was determined that the hail damage to the roof occurred prior to the installation
of the rooftop AC units that were installed in 2010. For your reference, a copy of the Envista report has
been attached with this letter.

24.     Defendant failed to comply with the Policy, the Texas Insurance Code and Texas law in

handling Plaintiff's claim. Further, Defendant has refused to pay all amounts due and owing under

the Policy for the Claim.

25.     Plaintiff presented a claim under its Policy for damage caused by the Storm.  It was

Defendant's responsibility, not Plaintiff's, to conduct a reasonable and thorough investigation of

the Claim to determine the specific cause and the amount of loss. Rather than accept coverage for

the obvious damage caused by the catastrophic Storm, Defendant unreasonably delayed their

investigation of the Claim and did not complete its claim investigation until March 22, 2019.

26.     Defendant failed to perform a thorough investigation of the Claim by relying on biased,

conclusory expert opinions that were based on inadequate inspections and seriously flawed logic—

these opinions grossly misrepresented the extent, value and timing of the damages to the Property.

This inadequate investigation is evident in Envista's damage estimate; but, of course, this one-

sided biased flawed logic designed to save Defendant hundreds of thousands of dollars was the

reason Envista had been retained by Defendant (in addition to being retained by countless other insurance carriers).

27.      Although Defendant and their agents are required by Texas law and the Policy to conduct a reasonable and thorough investigation of the Claim, they clearly failed to do so.   Rather, Defendant conducted a substandard investigation of the Claim, and failed to determine the full amount of Plaintiff's damages. Defendant's inadequate investigation is demonstrated by their conclusions that the Property "does not appear to have occurred on May 21, 2017 as reported" and that there are "no signs of hail damage." Further, Defendant's investigation was also inadequate because even though Plaintiff through its public adjuster advised Defendant it had mischaracterized the nature and timing of the damage from the Storm, Defendant refused to investigate the Claim further and shifted its responsibility for adjusting the Claim on Plaintiff. The Texas-licensed public adjuster conducted a detailed investigation into the Claim and presented evidence that the hail and wind damage to the Property's roofing systems resulted in a failure of the roof coverings to perform their intended function to keep out elements over an extended period of time.  The public adjuster visually inspected, photographed and prepared an estimate of damage for the Property, determining that the replacement cost value to properly and permanently repair the covered structural damage caused by the hail and wind damage during the Storm was $755,803.23.

28.      Defendant's improper handling of the Claim subjects them to liability pursuant to TEX. INS. CODE § 541.001, *et seq.* and TEX. INS. CODE § 542.051, *et seq.* Defendant violated TEX. INS. CODE § 541.060(a) TEX. BUS. AND COMM. CODE § 17.41, *et seq.*, engaging in Unfair Settlement Practices by:

        a.   Misrepresenting to Plaintiff material facts or policy provisions relating to the coverage at issue. Specifically, Defendant represented to Plaintiff that the hail and wind damage

they reported did not occur on May 21, 2017, when in fact the hail storm's winds caused substantial damage to the Property, including but not limited to damaging the roofing system so extensively that it now requires replacement.

b.    Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Claim, even though Defendant's liability under the Policy was reasonably clear. Defendant acted in bad faith when they ignored the obvious covered damage to the Property, and falsely determined that hail and wind damage was not caused from the Storm on May 21, 2017 therefore being excluded from the Policy. In addition, my client has dutifully paid its premiums to Defendant, who had numerous opportunities to inspect and reevaluate Plaintiff's coverage on this building year-after-year (choosing to underwrite this risk and annually cash Plaintiff's annual premium checks).

c.    Failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law for Defendant's underpayment of the Claim or offer of a compromise settlement of the Claim. Defendant's investigation on the Claim was unreasonable because the damage to the Property was caused by hail and wind damage and water damage resulting from the May 21, 2017 hail and wind storm, yet they waited over six months before informing my client of the results of their biased, one-sided investigation.

d.    Failing within a reasonable time to affirm or deny coverage of the Claim to Plaintiff. Defendant's failure to take a formal coverage position on the entire loss for over six months is per se unreasonable. Defendant has apparently wholeheartedly adopted D'Arbonne and Envista's flawed conclusions in their rejection letters to Plaintiff.

e.    Refusing to pay Plaintiff's Claim without conducting a reasonable investigation with respect to the Claim. Defendant's investigation was clearly unreasonable because it failed to determine the full amount and timing of Plaintiff's damages. Had Defendant conducted a reasonable and thorough investigation of the Claim, it would have determined the actual amount of my client's covered losses and could have made a timely decision on the Claim. Envista was able to definitively decide during its short investigation that the hail and wind damage was sustained "prior to the installation of the rooftop AC units that were installed in 2010" because there was allegedly no evidence of hail damage to the rooftop air conditioning units. Despite recognizing the A/C unit with no alleged hail damage from the Storm had a "cover" on it, Defendant conveniently disregarded Envista's own weather data that 10 other hail storms had occurred since 2010 within 5 miles of the Property which apparently had not sufficiently impacted the unit. And, of course, the Storm was the only wind event in the last 10 years where wind speeds even remotely approached 95+ MPH, more than sufficient to drive even smaller hail stones into the roofing system and significantly impact the overall functionality of the roofing system. Defendant additionally disregarded or ignored Plaintiff's reported increased leak history since the Storm (which prompted Plaintiff to retain a licensed public adjuster in the first place). With complete knowledge that Envista is routinely hired by insurance carriers across Texas,

(

Envista was hired knowing that the retention of this third-party engineering company would create the appearance of a bona fide disagreement between Plaintiff's expert (the public adjuster) and the carrier, potentially absolving Defendant of bad faith exposure down the road for its strained coverage position. Defendant then relied on the conclusions from both D'Arbonne and Envista based on inadequate and biased inspections, which claimed that the damages sustained by the Storm actually took place "prior to the installation of the rooftop AC units that were installed in 2010." Unsurprisingly, Envista stuck with the party line set by D'Arbonne, attributing the vast majority of the damages to the Property to anything other than the Storm.

29. Defendant took advantage of Plaintiff's lack of knowledge, ability, experience or capacity to a grossly unfair degree and to Plaintiff's detriment. Defendant's acts also resulted in a gross disparity between the value received and the consideration paid in a transaction involving the transfer of consideration. As a result of Defendant's violations, Plaintiff suffered actual damages. In addition, Defendant committed the above acts knowingly and/or intentionally, entitling Plaintiff to three times its damages for economic relief.

30. Further, Defendant violated the prompt payment of claims provisions of TEX. INS. CODE § 542.051, *et seq.* by delaying payment of the Claim following Defendant's receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided by TEX. INS. CODE § 542.058. Defendant's decision to deny the claim by letter dated March 22, 2019 demonstrates that it was in receipt of all items, statements, and forms that it would need to make a claim decision on that date. More than 75 days have passed from March 22, 2019 without payment on the Claim, which is longer than the time limits established by TEX. INS. CODE §§ 542.058 and 542.059. Accordingly, Defendant is liable to Plaintiff for damages pursuant to TEX. INS. CODE §542.051, *et seq.*

### D. Plaintiff's Notice Letter and Defendant's Second Bite at the Apple.

31. On June 1, 2017, Governor Abbot signed House Bill 1774 into law as Section 542A of the Texas Insurance Code. This new law was sponsored by approximately sixty state representatives

and senators and contains important consumer protections against a variety of unscrupulous practices.  Section 542A.003 in particular requires detailed, comprehensive pre-suit notice that is intended to make the claims and litigation processes more transparent and potentially even avoid unnecessary lawsuits.  Upon receiving notice, an insurer has a right to conduct an inspection, and even make an offer to avoid litigation.  When utilized properly, Section 542A should assist business consumers like Plaintiff to avoid protracted litigation over a clear insurance claim.

32.     On May 20, 2019, Plaintiff's counsel sent Defendant (through its counsel) a letter notifying Defendant of Plaintiff's claims against Defendant arising under Chapters 541 and 542 of the Texas Insurance Code, as required by TEX. INS. CODE §§ 541.154 and 542A.003 (the "Notice Letter"). The Notice Letter specifically described Defendant's violations of the Texas Insurance Code, using language substantially identical to the allegations contained in this pleading.  Further, the Notice Letter provided a comprehensive outline of Plaintiff's claims and damages, and quantified Plaintiff's losses on the Claim (by presenting the detailed expert report and photos from UPC).

33.     Following receipt of the Notice Letter, Defendant did not attempt to reach a resolution on the Claim. Defendant simply put on a puppet show during the 60-day period following receipt of the Notice Letter. Every piece of information was readily available to Defendant months before receiving such correspondence. Defendant has been given a second bite at the apple and has still failed Plaintiff.

**E. Defendant's Insurance Code Violations.**

34.     Defendant failed to perform its contractual duties to adequately compensate Plaintiff under the terms of the Policy.  Specifically, Defendant refused to pay for damages owed under the Policy, although all conditions precedent to recovery upon the Policy in question had been satisfied by

Plaintiff. Defendant's conduct constitutes a breach of the insurance contract between Defendant and Plaintiff.

35.    Defendant failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's Claim, when Defendant's liability was reasonably clear.  Defendant's conduct constitutes a violation of TEX. INS. CODE §541.060(a)(2)(a).

36.    Defendant failed to explain to Plaintiff the reasons for their offer of an inadequate settlement.  Specifically, Defendant failed to offer Plaintiff adequate compensation, without any explanation why full payment was not being made. Furthermore, Defendant did not communicate that any future settlements or payments would be forthcoming to pay for the entire loss covered under the Policy, nor did Defendant provide any explanation for the failure to adequately settle Plaintiff's claim. Defendant's conduct constitutes a violation of TEX. INS. CODE §541.060(a)(3).

37.    Defendant failed to affirm or deny coverage of Plaintiff's claim within a reasonable time. Specifically, Plaintiff did not receive timely indication of acceptance or rejection, regarding the full and entire claims, in writing from Defendant.  Defendant's conduct constitutes a violation of TEX. INS. CODE §541.060(a)(4).

38.    Defendant refused to fully compensate Plaintiff for the Claim without conducting a reasonable investigation of the Claim.  Rather, Defendant performed an unreasonable outcome-oriented investigation of Plaintiff's claim, which resulted in a biased, unfair and inequitable evaluation of Plaintiff's Claim.  Defendant's conduct constitutes a violation of TEX. INS. CODE §541.060(a)(7).

39.    Defendant failed to meet its obligations under the Texas Insurance Code regarding the timely acknowledgement of Plaintiff's claim, beginning an investigation of Plaintiff's claim and requesting all information reasonably necessary to investigate Plaintiff's claim within the

statutorily mandated time of receiving notice of Plaintiff's claim. Defendant's conduct constitutes a violation of TEX. INS. CODE §542.055.

40.     Defendant failed to accept or deny Plaintiff's full and entire Claim within the statutorily mandated time of receiving all necessary information. Defendant's conduct constitutes a violation of TEX. INS. CODE §542.056.

41.     Defendant failed to meet its obligations under the Texas Insurance Code regarding payment of claims without delay. Specifically, Defendant delayed full payment of Plaintiff's claim longer than allowed and, to date, Plaintiff has not yet received full payment for Plaintiff's claim. Defendant's conduct constitutes a violation of TEX. INS. CODE §542.058.

42.     From and after the time Plaintiff's claim was presented to Defendant, the liability of Defendant to pay the Claim in accordance with the terms of the Policy was reasonably clear. However, Defendant has refused to pay Plaintiff in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied on to deny the full payment. Defendant's conduct constitutes a breach of the common law duty of good faith and fair dealing.

43.     Defendant knowingly or recklessly made false representations, as described above, as to material facts and/or knowingly concealed material information from Plaintiff.

44.     Because of Defendant's wrongful acts and omissions, Plaintiff was forced to retain the professional services of the law firm who is representing Plaintiff with respect to these causes of action.

45.     Unfortunately, Defendant failed to comply with the Policy, the Texas Insurance Code, and Texas Law in handling the Claim, and has failed to pay all amounts due and owing under the Policy for the Claim. Defendant and its representatives failed to perform a thorough investigation of Plaintiff's claim, failed to employ appropriate or qualified consultants to evaluate the damages,

delayed resolution of the claim under Texas law, and misrepresented applicable scopes of damages as well as the terms of the Policy. Adjusters employed by Defendant violated the law through their own acts and omissions in the handling of the Claim. Because of these violations of law and wrongful conduct, Plaintiff has sustained and continues to sustain significant damages, including but not limited to property damage, diminution of property value, attorney's fees, financial harm, and other consequential damages.

46.     Plaintiff has fulfilled all duties required of it pursuant to the terms of the Policy.

## VII.
## CAUSES OF ACTION AGAINST DEFENDANT

47.     Plaintiff incorporates all of the aforementioned facts into its causes of action below for all purposes. Defendant is liable to Plaintiff for intentional breach of contract, as well as intentional violations of the Texas Insurance Code and intentional breach of the common law duty of good faith and fair dealing.

### A.  Breach of Contract.

48.     The Policy is a valid, binding and enforceable contract between Plaintiff and Defendant. Defendant breached the contract by refusing to perform its obligations under the terms of the Policy and pursuant to Texas law. Defendant's breach proximately caused Plaintiff's injuries and damages. All conditions precedent required under the Policy have been performed, excused, waived or otherwise satisfied by Plaintiff, or Defendant is estopped from raising the issue due to Defendant's prior breach of the insurance contract.

### B.  Noncompliance With Texas Insurance Code: Unfair Settlement Practices.

49.     The conduct, acts, and/or omissions by Defendant constituted Unfair Settlement Practices pursuant to TEX. INS. CODE. §§541.060(a) & 541.061(1)-(3). All violations under this article are made actionable by TEX. INS. CODE §541.151.

50.     Defendant's unfair settlement practice, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX.INS.CODE §541.060(1).

51.     Defendant's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though Defendant's liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX.INS.CODE §541.060(2)(A).

52.     Defendant's unfair settlement practice, as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its offer of a compromise settlement of the claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(3).

53.     Defendant's unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiff or to submit a reservation of rights to Plaintiff, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE §541.060(4).

54.     Defendant's unfair settlement practice, as described above, of refusing to pay Plaintiff's claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX. INS. CODE §541.060(7).

55.     Defendant's conduct described above compelled Plaintiff to initiate a lawsuit to recover amounts due under its policy by offering substantially less than the amount ultimately recovered. Defendant's refused to even offer more than its own grossly undervalued estimates despite actual

damages which were much greater.  This continued failure compelled Plaintiff to file suit.  TEX. INS. CODE §542.003(5).

### C.  Prompt Payment Of Claims Violations.

56.    The Claim is a claim under an insurance policy with Defendant of which Plaintiff gave Defendant's proper notice.  Defendant is liable for the Claim.  Defendant violated the prompt payment of claims provisions of TEX. INS. CODE § 542.051, *et seq.* by:

   a) Failing to acknowledge receipt of the Claim, commence investigation of the Claim, and/or request from Plaintiff all items, statements, and forms that Defendant reasonably believed would be required within the time constraints provided by TEX. INS. CODE §542.055;

   b) Failing to notify Plaintiff in writing of its acceptance or rejection of the Claim within the applicable time constraints provided by TEX. INS. CODE §542.056; and/or by—

   c) Delaying payment of the Claim following Defendant's receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided by TEX. INS. CODE §542.058.

57.    Defendant's violations of these prompt payment of claims provisions of the Texas Insurance Code are made actionable by TEX.INS.CODE §542.060.

### D.  Breach Of The Duty Of Good Faith And Fair Dealing.

58.    Defendant breached the common law duty of good faith and fair dealing owed to Plaintiff by denying or delaying payment on the Claim when Defendant knew or should have known that its liability to Plaintiff was reasonably clear.  Defendant's conduct proximately caused Plaintiff injuries and damages.

## VIII.
## KNOWLEDGE

59.    Defendant's acts described above, together and singularly, was done "knowingly" as that term is used in the Texas Insurance Code and was a producing cause of Plaintiff's damages described herein.

## IX.
## DAMAGES

60.    Plaintiff will show that all the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiff.

61.    For breach of contract, Plaintiff is entitled to regain the benefit of Plaintiff's bargain, which is the amount of Plaintiff's claim, together with attorney fees.

62.    For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the Policy, court costs and attorney's fees. For knowing conduct of the acts complained of, Plaintiff asks for three times Plaintiff's actual damages. TEX. INS. CODE §541.152.

63.    For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of Plaintiff's claim, as well as statutory percent interest per annum of the amount of Plaintiff's claim as damages, together with attorney's fees. TEX.INS.CODE §542.060.

64.    For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, exemplary damages and damages for emotional distress.

65.    For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the law firms whose names are subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorneys in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

## X.
## JURY DEMAND

66.     Plaintiff hereby requests a jury trial and tenders the appropriate jury fee.

## XI.
## PRE-AND-POST JUDGMENT INTEREST SOUGHT

67.     Plaintiff further seeks for the recovery of all interest allowed at law, including pre-judgment and post-judgment interest.

## XII.
## CONDITIONS PRECEDENT SATISFIED

68.     Plaintiff alleges that all conditions precedent to the maintenance of this action have been met or satisfied, in accordance with Rule 54 of the Texas Rules of Civil Procedure.

## XIII.
## SELF-AUTHENTICATION

69.     Pursuant to Rule 193.7, this is the "actual" written notice that all documents produced in this litigation shall be used by the Plaintiff at pretrial proceedings and trial. Hence, all documents produced in this litigation are deemed self-authenticating for use in any pretrial proceeding or at trial; and any objections thereto by Defendant shall be in writing or placed on the record, giving Plaintiff a reasonable opportunity to establish the challenged document's authenticity.

## XIV.
## REQUEST FOR DISCLOSURE

70.     Pursuant to Texas Rule of Civil Procedure 194, Plaintiff requests that Defendant disclose the information or material described in Rule 194.2.

## XV.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon trial hereof, Plaintiff has and recovers such sums as would reasonably and justly compensate Plaintiff in accordance with the rules of law and procedure, both as to actual damages, statutory penalties and interest, treble damages under the Texas Insurance Code and all punitive and exemplary damages

as may be found.  In addition, Plaintiff requests the award of attorneys' fees for the trial and any

appeal of this case, for all costs of Court on their behalf expended, for pre-judgment and post-

judgment interest as allowed by law, and for any other and further relief, either at law or in equity,

to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,

**LUNDQUIST LAW FIRM**

By:      */s/   William W. Lundquist*
WILLIAM W. LUNDQUIST
Texas Bar No.: 24041369
Will@LundquistLawFirm.Com
743 W. 18th Street
Houston, TX 77008
Telephone: 832-255-3014
Fax: 713-583-5586

ATTORNEY FOR PLAINTIFF